Batten vs. Smith and another.

Batten vs. Smith and another.

*December 18, 1884 — January 13, 1885.*

VOLUNTARY ASSIGNMENT.    *(1, 4) Inventory: Omissions by mistake. (2) Proof of fraudulent intent. (3) Previous fraudulent transfers of property.*

1. The statute (sec. 1697, R. S.) providing that no mistake in the inventory and list of creditors shall invalidate a voluntary assignment, applies to mistakes of omission..

2. Since the enactment of the laws (ch. 170, Laws of 1882, and ch. 349, Laws of 1883) designed to prevent preferences, direct and indirect, and making the assignee a representative of creditors with power to avoid illegal transfers by the debtor, more conclusive proof of fraudulent intent in a general assignment may properly be required before the same is held void as to creditors subsequently attaching the property.

3. Fraudulent transfers of property by a debtor just previous to a general assignment do not avoid such assignment but are themselves avoidable under it.

4. Nor would the omission of the property so fraudulently transferred invalidate the assignment under sec. 1697, R. S. As against the assignor (though not as against the assignee) the title would pass by the transfer and he would have no power to assign such property and hence no right to include it in the inventory.

APPEAL from the Circuit Court for *Iowa* County.

January 9, 1884, the defendants, composing the firm of R. S. Smith & Co., made an assignment under ch. 80, R. S., to Richard T. Richards, of all their property and effects of every kind and description, real, personal, and mixed, belonging to them, or in which they, or either of them, had any right or interest, or which were held by any person or persons for them, or in trust for them, or either of them (except such as were exempt from levy and sale on execution under the laws of the state of Wisconsin), the same being more fully and particularly enumerated and described in a verified inventory to be filed in the office of the clerk within ten days thereafter. Such verified inventory and list of creditors were certified and filed within the time designated.

January 22, 1884, the plaintiff commenced this action against the defendants by summons. On the same day the plaintiff made an affidavit to the effect that the defendants were indebted to him in the sum of $1,200, over and above all legal setoffs, and that the same was due upon express contracts, and that the plaintiff had reason to believe, and did believe, that the defendants had assigned, conveyed, and disposed of their property, or a part of it, with the intent to defraud their creditors. The plaintiff gave the requisite bond; writs of attachment were issued; and on January 24 and 25, 1884, the sheriff returned that he had attached all the interest the defendants had in two certain judgments, and certain pieces of real estate described, and filed an inventory thereof accordingly.

January 26, 1884, a supplemental inventory, embracing two parcels of land and the two judgments which had been attached, was filed, together with an affidavit that they had been omitted from the first inventory by mistake, and a statement explaining how such mistake had occurred.

February 2, 1884, the defendants served their special answer, verified by them respectively, in which they denied

and traversed each and every material statement contained in the plaintiff's said affidavit for an attachment, except as to their liability for the debt, and pleaded said general assignment.

March 6, 1884, the plaintiff made and filed a new affidavit, as a substitute for the original, stating, in effect, that the defendants had assigned, conveyed, disposed of, or concealed, or were about to assign, convey, dispose of, or conceal, their property, or some part thereof, with intent to defraud their creditors; and that the defendants fraudulently contracted one of the debts for which this action was brought. Thereupon the defendants, by way of special answer to said substituted affidavit, admitted their liability for the debt, but denied each and every other allegation therein contained.

March 12, 1884, the defendants applied for an order permitting them still further to amend their inventory by including in it a certain safe. This motion was based upon an affidavit stating that the defendants sold the safe to one William Heathcock, January 8, 1884, and at the time of making the inventory believed such sale to be legal, but had since been informed that it was invalid; that said Heathcock, finding that there were doubts as to the validity of the sale, had released his interest in the safe to the defendants on March 10, 1884; and that the safe was omitted from the inventory by mistake. It does not appear from the printed case whether this motion was granted or not. William Heathcock was the father-in-law of one of the defendants, and was a creditor of the firm to a large amount.

Upon the trial of the issue formed by the special answer to the substituted affidavit, the court found that when the writs of attachment were issued the defendants had not assigned, conveyed, disposed of, or concealed, nor were they about to assign, convey, dispose of, or conceal, their property, or any part thereof, with intent to defraud their creditors; and held, as a conclusion of law, that they were entitled to an

order dissolving the writs.    From the order entered accordingly, the plaintiff appealed.

For the appellant there was a brief signed by *J. P. Smelker*, attorney, and *J. C. Gregory*, of counsel, and a supplemental brief signed by *J. P. Smelker*, attorney, and *Gregory & Gregory*, of counsel, and the cause was argued orally by *Mr. Smelker* and *Mr. J. C. Gregory*.    They contended, *inter alia*, that it was not shown that the omissions from the inventory happened through mistake, and the assignment was therefore fraudulent and void.    The omission being shown, the burden of showing the mistake was upon the defendants. Burrill on Assignments (2d ed.), § 274; *Farrington v. Sexton*, 43 Mich. 456; *Haben v. Harshaw*, 59 Wis. 403; *Le Prince v. Guillemot*, 1 Rich. Eq. 201; *Spencer v. Jackson*, 2 R. I. 44; *Wyles v. Beals*, 1 Gray, 236; *Price v. Haynes*, 37 Mich. 487; *Hubbard v. McNaughton*, 43 id. 224; *Guerin v. Hunt*, 6 Minn. 397; *Vernon v. Upson*, 60 Wis. 418.

For the respondents there was a brief by *J. M. Smith* and *Calvert Spensley*, and oral argument by *Mr. Smith*.    The only issue was whether the defendants had assigned their property with intent to defraud their creditors.    *Davidson v. Hackett*, 49 Wis. 186.    The burden of proof was on the plaintiff.    The intent to defraud could not be inferred from the mere fact of a general assignment.    *Lord v. Devendorf*, 54 Wis. 491; *Goldsmith v. Barber*, 53 Iowa, 295.    Omissions of property from the inventory through mistake were immaterial and could be corrected.    *Brahe v. Eldridge*, 17 Wis. 184; *Farwell v. Gundry*, 52 id. 268.

CASSODAY, J.    The statute requiring the assignor to make and file, in the office of the clerk, "a correct inventory of his assets, and a list of his creditors," within ten days after the execution of the assignment, is peremptory, and a failure to so make and file avoids the assignment.    Sec. 1697, R. S.; *Haben v. Harshaw*, 59 Wis. 410.    But the same section and

the same decision declare, in effect, that no mistake made in the inventory or list filed shall invalidate the assignment or affect the right of any creditor. The word "mistake" is not confined to inaccurately stating or describing any of the several items actually mentioned in the list or inventory, but may cover mistakes of omission as well. *Farwell v. Gundry*, 52 Wis. 268; *Smith v. Bowen*, 61 Wis. 258. In the first of those cases the assignor wholly omitted from his inventory the land on which he resided in a village, notwithstanding it comprised more than one fourth of an acre, under the supposition that he was entitled to forty acres as exempt; but the court held that the word "mistake," in the statute, included mistakes of law, even where all the facts were known to the assignor at the time of making the assignment. In the second, certain creditors were inadvertently omitted from the list, but the assignment was upheld. The obvious purpose of requiring the assignor to file such list of creditors was to enable the assignee to give the notice to creditors prescribed in sec. 1698, R. S. *Mather v. McMillan*, 60 Wis. 546.

The fact that such list is not conclusive upon the assignee nor any creditor, but may be contested by either, as provided in sec. 1699, pretty clearly shows that such assignment is not necessarily invalidated by reason of an improper claim being innocently and by mistake included in such list. This is strengthened by the construction put upon the word "such," as used in the last clause of sec. 1697, by this court in *Steinlein v. Halstead*, 52 Wis. 291, and also by what is said in *Mather v. McMillan, supra.* So the obvious purpose of requiring the assignor to file "a correct inventory of his assets" was not only to give to the assignee and creditors the requisite information and description of the property assigned, but also to prevent the assignor from defrauding his creditors by concealing or secretly withholding from the assignee any portion of his property. *Ibid.* In other

words, it was to prevent fraud or bad faith as against creditors, and secure a faithful execution of the trust. Here the two judgments attached, certain lands, and other property claimed by the plaintiff to belong to the defendants, were omitted from the original inventory; but that was soon followed by supplemental and verified inventories, stating, in effect, that they were so omitted by mistake, and explaining why.

The traverse put in issue the alleged fraudulent intent of the defendants in making the transfer, and upon that issue the plaintiff had the burden of proving, not merely the belief, or the good reason for the belief, of the existence of such fraudulent intent, but the existence, in fact, of such intent to defraud in making such transfer. *Davidson v. Hackett*, 49 Wis. 186. Without going into details, it is enough to say that we find no evidence of any intentional omission of any property from the inventory, nor any evidence that in making the assignment the defendants intended to defraud any of their creditors. Especially must we so hold, in view of the recent amendments to the statutes enlarging the rights and powers of assignees, and prohibiting the debtor from giving preferences in such cases. While the law authorized a failing debtor to prefer some of his creditors at the expense of others, either by way of sale, special transfer, or a general assignment for the benefit of creditors, and left the assignee as the mere representative of the debtor, without giving him the right to acquire such property as the debtor had fraudulently conveyed or transferred prior to the assignment, as was held in *Estabrook v. Messersmith*, 18 Wis. 545, and *Hawks v. Pritzlaff*, 51 Wis. 160, there was much more reason for holding a stringent rule of construction than there is since the recent amendments. Now the assignee represents the rights and interests of the creditors of the assignor making the assignment, as against all transfers and conveyances which would be held

fraudulent or void as to creditors; and such assignee is expressly given all the rights which such creditors would have to bring and maintain an action to avoid such fraudulent conveyances and transfers. Ch. 170, Laws of 1882; *Vernon v. Upson*, 60 Wis. 422. So the more recent act not only avoids every assignment giving a preference, except for the wages of laborers earned within six months prior to the assignment, but also avoids all preferences acquired within sixty days before the assignment, by virtue of the levy under a judgment confessed by the assignor, or by a judgment entered on his judgment note, or by any sale, mortgage, hypothecation, lien, or other security, made, given, or executed by the assignor in contemplation of making such assignment or of insolvency; provided the person benefited thereby, or receiving the same, knew, or had reasonable cause to believe, such debtor insolvent. In addition, the same act expressly declares that "the assignee in such assignment shall possess all the powers *thereunder* necessary to institute any action or proceeding to set aside and avoid any levy, sale, mortgage, hypothecation, lien, or other security named" therein. Ch. 349, Laws of 1883.

Thus, under the law as it now stands, an assignee for the benefit of creditors stands in very much the same attitude and is possessed of quite similar powers to, an assignee in bankruptcy under the act of Congress of 1867. By these two recent enactments, the legislature have manifested the purpose of upholding general assignments so made for the benefit of *all the creditors* of the assignor, and to prevent all indirect methods of obtaining any preference through the active agency of the debtor at any time during the sixty days immediately preceding the assignment, and to enable the assignee, as the representative of such creditors, to avoid such illegal transfers, and to recover back for their benefit the property so fraudulently disposed of by the assignor.

The transfers of the safe to the father-in-law, and other

Batten vs. Smith and another.

property to other parties, alleged to have been made by the defendants in fraud of their creditors just prior to making the assignment, instead of having the effect of avoiding the assignment, were, by virtue of these recent enactments, avoidable under the assignment. Nor would the omission of the property so fraudulently transferred, from the inventory, invalidate the assignment under sec. 1697. Assuming that such transfers were in fact fraudulent, yet the title to the property transferred absolutely passed from the assignors, who thereby lost all right of reclaiming the same and hence were powerless thereafter to again transfer or even assign the property for the benefit of their creditors. This being so, they had no more right to include such property in their inventory than they had to include the property of any stranger. True, the assignee appointed by the debtors is in duty bound under the assignment to avoid such prior fraudulent transfers, yet, in doing so, he in no sense represents the debtors; on the contrary, he, under the authority expressly given to him by the enactments in question, represents the defrauded creditors.

Thus it appears that instead of the assignment being made with the intent to defraud creditors, it was made by repentant debtors to obviate the consummation of their own frauds as against their own creditors, and to secure an equal distribution of all their property, and such as they had fraudulently transferred, among all their creditors, including the plaintiff. Such an assignment, to secure such equal distribution among all their creditors, was certainly fair, equitable, and beneficent in its purpose, and its element of equality would seem to preclude all possibility of its being made with the intent to defraud any of such creditors.

The question presented, therefore, is whether the property assigned, and such as had been so fraudulently transferred prior to the assignment, shall be thus equally distributed among all the creditors, including the plaintiff, or the plaintiff

be allowed to have a preference over the other creditors by virtue of his attachment. Upon this question the equities are all one way, and we are unable to find any valid reason for disturbing the findings of the trial court.

The inventory filed describes parts of two lots in a village as the homestead of the defendant *R. S. Smith,* and claims the same as exempt. Such homestead, of course, is specifically exempted by the statute, and there is no imperative obligation upon the debtor to make any selection of it. Secs. 2983, 2984, R. S. Besides, as it could not be conveyed without the signature of the wife, it certainly could not be assigned by the husband alone, for the benefit of his creditors. Sec. 2203, R. S. There seems to be no other feature of the exemption clause in the assignment, not fully covered by the opinion in *Bates v. Simmons, ante,* p. 69, filed herewith. See, also, *First Nat. Bank v. Hackett,* 61 Wis. 335.

*By the Court.*— The order of the circuit court is affirmed.

LYON, J., took no part.

