The Conlee Lumber Co. vs. Ripon Lumber and Manufacturing Co.

66 481
98 400

THE CONLEE LUMBER COMPANY, Appellant, vs. RIPON LUMBER AND MANUFACTURING COMPANY, Respondent.

*September 2 — September 21, 1886.*

VOLUNTARY ASSIGNMENT: FRAUDULENT CONVEYANCE: ATTACHMENT. *(1) Unsuccessful attempt to assign. (2, 3) Filing inventory and list of creditors: Relation: Preferences: Presumption as to intent. (4) Application of payments. (5–8) Assignment by corporation: Preferences to officers, etc.: " Wages of laborers, servants, or employees." (9) Mistake in giving preference. (10) Fraudulent conveyance before assignment: Attachment. (11) Who may be assignee of corporation. (12) Want of capacity in assignee.*

1. A mere unsuccessful attempt to make a general assignment for the benefit of creditors evinces no intent to defraud creditors.

2. The inventory of assets and list of creditors when filed within ten days, as required by sec. 1697, R. S., relate back to the time of the execution of the assignment, and constitute a part of it.

3. An assignment directed the payment first of certain debts enumerated in a schedule to be annexed and designated therein as class No. 1, and then, out of the residue of assets, of the debts enumerated in said schedule and designated as class No. 2, and all other debts of the assignor. *Held:*

   (1) The schedule to be so annexed being the list of creditors required to be filed within ten days, the assignment did not reserve to the assignor, for an indefinite time, the right to give preferences.

   (2) It will be presumed that in said schedule the assignor intended to give preference only to such debts as the law permits to be preferred.

4. Prior to an assignment the assignor had bought a horse from one C. on credit, and C. had thereafter until about the time of the assignment worked for the assignor, and payments had been made to him without any specific application thereof. By the assignment C. was a preferred creditor to a certain amount. Applying the payments first on the horse, the amount of the preferred debt would be due for his services, and the preference would be lawful. *Held*, that the payments should be deemed to have been so applied.

5. A stockholder, director, or officer of a corporation making an assignment may be a preferred creditor for wages earned by him as a laborer, servant, or employee of the corporation, under ch. 349, Laws of 1883.

6. A drayman employed by the assignor may be a preferred creditor for the amount due for his services, under ch. 349, Laws of 1883.

7. The salary of the manager of a lumber and manufacturing company is the "wages" of an " employee," withing the meaning of ch. 349, Laws of 1883.

8. A carriage-maker and blacksmith, having shops of his own, did work for a lumber and manufacturing company from time to time,— manufacturing knives, bolts, etc. For most of the things made by him the company furnished the materials. *Held,* that in an assignment by the company the amount due for such services might be a preferred claim, as being the wages of a laborer, servant, or employee of the company, under ch. 349, Laws of 1883. *Lang v. Simmons,* 64 Wis. 525, distinguished.

9. A mere mistake in giving preference to the whole claim of a creditor, when a part only might lawfully be preferred, will not invalidate an assignment.

10. A misapplication or fraudulent transfer of the funds of a corporation prior to making an assignment, will not invalidate the assignment or authorize an attachment of the assigned property.

11. The fact that the assignee of a corporation has been a stockholder and secretary thereof, does not incapacitate him to act as such assignee.

12. A want of capacity on the part of the assignee to act as such does not show a fraudulent intent in the assignment.

APPEAL from the Circuit Court for *Jefferson* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

January 31, 1885, the defendant made a general assignment for the benefit of creditors to T. D. Stone, containing a direction, in effect, for the payment, out of the net proceeds of the estate, all and singular the debts "set forth and enumerated in a schedule to be annexed, marked 'Schedule C,' and designated in said schedule as Class No. 1;" and then, out of " the residue and remainder of the said net proceeds, . . . pay in full all and singular the debts, demands, and liabilities due, or to grow due, enumerated as Class No. 2" in said Schedule C, and all other indebtedness owing by the defendant to any person or persons whomsoever; and, if there be not sufficient of said net

proceeds for that purpose, then to apply the same ratably, and in proportion to the respective amounts of such debts.

At the time of making the assignment the defendant was indebted to the plaintiff in the sum of $3,079.22, with interest from August 1, 1884, upon which claim the plaintiff brought suit against the defendant, and attached the property assigned, February 4, 1885, upon an affidavit alleging that the defendant " has assigned, conveyed, and disposed of its property with intent to defraud its creditors."

The defendant traversed the attachment; and upon the trial of such issue the court found as matters of fact that the allegations of the defendant's answer. traversing the plaintiff's affidavit for attachment were true, and that the defendant " did not assign, convey, or in any manner dispose of, and had not assigned, conveyed, or in any manner disposed of, its property, or any part thereof, with intent to defraud its creditors, as claimed or alleged in said affidavit of attachment;" and, as conclusions of law, that the defendant was entitled to an order setting aside the writ, and dissolving the attachment, and directing the restoration of the property attached to the defendant or its assigns, with costs; which was ordered accordingly; and from that order the plaintiff appeals.

For the appellant there was a brief by *M. H. Eaton*, attorney, and *Finch & Barber* and *Jackson & Thompson*, of counsel, and the cause was argued orally by *Mr. Barber*. They contended, *inter alia:*

I. 1. The assignment is void because it gives preference to certain creditors who shall be subsequently named in a schedule to be annexed to the assignment, and substantially reserves to the assignor the right to give further preferences. The assignment must itself fix and determine the rights of the creditors in the assigned property. Burrill on Assignm. (3d ed.), sec. 153; *Averill v. Loucks*, 6 Barb. 470; *Kercheis v. Schloss*, 49 How. Pr. 284; *Barnum v. Hempstead*, 7 Paige,

570; *Grover v. Wakeman*, 11 Wend. 203; *Moody v. Paschal*, 60 Tex. 483. In *Bates v. Simmons*, 62 Wis. 69, it was decided simply that if there was in that case any uncertainty in the description of the property assigned, it was made certain by the filing of the schedule, and that at the time the assignee was summoned as garnishee all uncertainty had vanished. The object of sec. 1697, R. S., was not to give the assignor ten days to complete the assignment, but to compel him within ten days to file a schedule of the assets theretofore assigned, and thus enable the creditors to hold the assignee; and to file within ten days a list of the creditors that the assignee might promptly give them notice. It does not purport to give ten days in which to declare preferences. Those should be stated in the assignment itself. *Ball v. Bowe*, 49 Wis. 498. 2. The assignment is void because the assignor has preferred debts contrary to sec. 1, ch. 349, Laws of 1883. The objection to the claim of Goodall, the carriage-maker and blacksmith, is stronger than that successfully raised in *Lang v. Simmons*, 64 Wis. 525, and *Canfield v. Lang*, 25 Fed. Rep. 128. As to the claim of Clough, the law will not make such application of the payments to him as will give him a preference over the other creditors. If neither the debtor nor creditor makes application of a payment, the law will make it as the justice and equity of the case may require. *Youmans v. Heartt*, 34 Mich. 397; *U. S. v. Kirkpatrick*, 9 Wheat. 720; *Proctor v. Marshall*, 18 Tex. 63; *Oliver v. Phelps*, 20 N. J. Law, 180; *Starrett v. Barber*, 20 Me. 457; *Selleck v. Turnpike Co.* 13 Conn. 453; *Pierce v. Knight*, 31 Vt. 701. Plaintiff having shown that the account of Clough included the price of a horse, the burden of proof was on the defendant to show that the preference was nevertheless legal. Whiting, whose claim was preferred, was a drayman who had contracted for a stipulated price to do the defendant's hauling. His bill included his own services, work of his team

or teams, and the use of his dray. He was a contractor, and in no sense a laborer, servant, or employee. Welcome was manager of the corporation, and the claim preferred is for his salary. He was not a laborer, servant, or employee, within the meaning of the statute. *Hill v. Spencer,* 61 N. Y. 274; *Dean v. De Wolf,* 16 Hun, 186; *Heebner v. Chave,* 5 Pa. St. 115; *P. & D. R. Co. v. Leuffer,* 84 id. 168; *Sullivan's Appeal,* 77 id. 107; 1 Fed. Rep. 270.

II. 1. The making of this pretended assignment which did not fix the rights of creditors, but reserved to the assignor the right to give future preferences, was a fraudulent disposition by the defendant of its property. The cases hold such an assignment invalid because fraudulent upon its face. *Averill v. Loucks,* 6 Barb. 476; *Grover v. Wakeman,* 11 Wend. 202; *Strong v. Skinner,* 4 Barb. 559; *Moody v. Paschal,* 60 Tex. 486. 2. The making of the illegal preferences was a fraudulent disposition of the property. Bump on Fraud. Conv. (3d ed.), 24, 25; *Hutchinson v. Lord,* 1 Wis. 312; *Haines v. Campbell,* 8 id. 192; *Anderson v. Patterson,* 64 id. 557; *Powers v. C. H. Hamilton Paper Co.* 60 id. 28; *Vernon v. Upson,* id. 418. 3. The voting of large salaries to all the officers under the circumstances was a fraudulent disposition of property.

For the respondent there was a brief by *Runals & Dunlap,* attorneys, and *Geo. E. Sutherland,* of counsel, and oral argument by *Mr. Sutherland* and *Mr. Runals.*

CASSODAY, J. The only issue for trial, and the only issue tried, was whether, by the assignment, the defendant assigned, conveyed, or disposed of its property with intent to defraud its creditors. If the assignment was made with such intent, then the attachment should have been sustained. If it was not made with such intent, then the attachment was properly dissolved, even if the assignment

was for some other reason void in law.   A mere unsuccess-
ful attempt to make a general assignment for the benefit of
all the debtor's creditors evinces no intent to defraud such
creditors.   *Batten v. Smith*, 62 Wis. 92; *First Nat. Bank v.
Rosenfeld*, *ante*, p. 292.   The statute gave ten days after
the execution of the assignment within which to complete
the same by filing a correct inventory of assets and a list
of creditors, as required.   Sec. 1697, R. S.   When so com-
pleted by the filing of such inventory and list, they relate
back to the time of the execution of the assignment, and
constitute a part of it.   For some purposes, at least, the in-
ventory and list may be read with the assignment as together
constituting one paper in law.   *Bates v. Simmons*, 62 Wis.
69.   When an assignment is thus completed within the pre-
scribed time, and otherwise valid, it cannot be defeated nor
frustrated by the seizure of the goods assigned, intermediate
the assignment and such filing.

It is claimed that the assignment was void because it
gave preferences to certain creditors to be subsequently
named by the assignor in a schedule to be annexed.   This is
said to have reserved to the assignor, for an indefinite
period, the right to give any preferences it might choose.
Such indefinite right of selection among creditors would be
a strained construction.   The two classes to be included in
Schedule C according to the assignment were together to
contain a correct list of all of the defendant's creditors, ·
and hence, by the statute cited, was required to be filed
within ten days after the execution of the assignment.
Since the preferred creditors were to be named in class No.
1 of that schedule which was to be filed within ten days, it
is evident they were to be specifically named therein before
the expiration of that time.   Of course, a failure to so file
within the time prescribed would avoid the assignment.
*Batten v. Smith*, 62 Wis. 95; *Haben v. Harshaw*, 59 Wis. 410.

But such mere failure would evince no intent to defraud creditors, and hence furnish no ground for an attachment. *First Nat. Bank v. Rosenfeld, supra.*

The statute made every assignment void which gave " any preference to one creditor over another creditor, except for the wages of laborers, servants, and employees earned within six months prior thereto." Ch. 349, Laws of 1883. Manifestly, an intention to prefer debts owing by the defendant for such wages was proper and legitimate under that statute. An intention to prefer any other class of creditors would have been contrary to law, and hence avoid the assignment. *Lang v. Simmons,* 64 Wis. 525. Assuming that such intention to give such illegal preferences would be an intent to defraud creditors, and hence ground for an attachment, must we conclusively presume that, at the time of making this assignment, the defendant intended to include in class No. 1 of said Schedule C creditors which it had no legal right to prefer, instead of confining it to such creditors as it had a legal right to prefer? We find no authority for indulging in such a presumption. We think that, in the absence of evidence to the contrary, the inference should be that, in making the assignment, the defendant's intention was to comply with the law, rather than to violate the law.

This brings us to the question whether this assignment gave any unlawful preference.

The $114.66 preferred to D. Clough is objected to. It appears that, a long time prior to the assignment, the defendant bought a horse of him for $125, on credit; that he, at the time, worked for the defendant, and continued to work for it right along until about the time of the assignment; that the defendant had, from time to time, made payments to Clough, which were charged to him generally, without anything being said as to the application of the payments. By applying the payments as fast as made upon

the horse until that was paid for, the preferred balance would be for services rendered in the employment of the defendant within six months prior to making the assignment. We think the payments should be regarded in law as having been so applied. In any event, such application did not evince an intent to defraud. The mere fact that Clough was a director of the defendant and counseled as to making the assignment, did not preclude him from being preferred for such services.

Spencer Whiting was employed by the defendant as a drayman, and the preference of $43.04, given to him for such services, clearly came within the rule.

J. W. Welcome is a preferred creditor for $119.74, balance due on his salary. He was at first vice-president of the defendant, and then became manager at a salary of $800 a year. He was an active business man, put his whole time in the business, took charge of selling lumber and measuring out and piling it, and all that. His being a stockholder and a manager on a salary did not prevent him from being an employee for wages within the meaning of the act. If the words "servants" or "employees," in the clause of the act quoted, mean nothing more nor different than the word "laborers" therein, then they are extremely tautological, and a useless repetition. It seems to us that the three words were used for the purpose of extending and broadening the exception made in the statute. Especially should this be so under the liberal rules adopted by this court for the purpose of upholding assignments for the benefit of creditors under our recent statutes. Most of the cases cited on this point by the learned counsel for the plaintiff are distinguishable. If any of them are in conflict with this decision, we decline to follow them. From the facts stated, it may be fairly inferred that Welcome came within the exception of the statute quoted.

A. M. Laning was a stockholder, and treasurer at a salary

of $1,000, to December 2, 1884. Then he resigned, and sold his stock to Stone, but continued to work for the defendant, as a sort of foreman in the mill, at the same salary. On the day the assignment was made he took back his stock from Stone, and was made secretary, and participated in making the assignment, and is preferred to the amount of $149.08 for the balance due him on such salary. This apparently accrued during the time he was not an officer. There is nothing warranting the conclusion that the claim is fictitious, nor that it is an improper claim to be preferred upon the principles already stated.

Among the preferred claims is an item of $73.10 to H. J. Goodall, for balance due on account for blacksmithing. He was a carriage-maker and blacksmith, and had shops of his own in Ripon, and did work from time to time for the defendant,— manufacturing knives and other things. The defendant furnished its own stock, steel, etc., for the manufacture of such knives and other things; so that the charge was really for the labor bestowed upon the materials. Goodall furnished materials for some small lots of bolts, two inches long; but in making long bolts and other things the defendant always furnished the iron. The claim seems to have been, substantially, for services rendered. The case is, as we think, distinguishable from *Lang v. Simmons, supra.* The claim, so preferred, was found, on investigation, to improperly include such services for the months of June and July, 1884, and that the true amount of such services rendered during the six months named in the statute was only $50. Including the whole appears to have been a mere inadvertence or mistake, and should not, therefore, invalidate the assignment. *Batten v. Smith, supra.* Certainly it does not evince an intent to defraud creditors.

We discover no sufficient evidence to warrant the conclusion that there was any misapplication of funds by way of salary or otherwise. If, prior to making the assignment,

there was any such misapplication or fraudulent transfer, it would not have the effect of avoiding the assignment,— much less of authorizing an attachment of the assigned property, as frequently held by this court. *Batten v. Smith*, *supra; Backhaus v. Sleeper, ante*, p. 68. In such case the remedy would be by action on the part of the assignee. *Ibid.* If the assignee failed to proceed within the requisite time, then it was made lawful for any creditor of the assignor to prove his claim, and institute and prosecute to judgment any such suit in the name of the assignee and for his benefit. Ch. 292, Laws of 1885.

There is nothing in the fact that Stone had been a stockholder and secretary of the company to incapacitate him from being assignee; especially after having resigned such office, and sold such stock. But even such want of capacity would not furnish ground for holding that the assignment was made with the intent to defraud creditors. Neither Stone nor the defendant's president, Merrill, was among the preferred creditors.

*By the Court.*— The order of the circuit court is affirmed.