MULLEN and others, Appellants, vs. REINIG, Garnishee, etc., Respondent.

*September 22 — October 9, 1888.*

*(1) Practice: Right of counsel to read opinions of supreme court to the jury. (2, 3) Instructions to jury: Misstatement of evidence by counsel: Appeal: Bill of exceptions. (4) Voluntary assignment: Delivery of property to assignee: Evidence.*

1. The question being whether a voluntary assignment was fraudulent as to creditors, there was no error in refusing to permit counsel to read to the jury an extract from the opinion of this court in another case, characterizing another transaction.

2. An instruction that if, in addressing the jury, counsel have inadvertently misstated the evidence, the jury must arrive at their conclusions from the evidence itself and not from the statements of counsel, furnishes no ground for criticism.

3. Where such an instruction was called for by some statement made by counsel to the jury, an exception thereto will not be sustained if such statement is not preserved in the record.

4. The mere fact that the assignee received a due-bill just before executing the assignment and while he still had possession of his other property, is no evidence that it was not delivered with the other property to the assignee.

APPEAL from the Circuit Court for *Fond du Lac* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

It appears from the record that December 24, 1884, the defendant, John Haberkorn, made a general assignment for the benefit of his creditors to the garnishee, *John Reinig;* that the principal action was commenced against Haberkorn, December 26, 1884, to recover $531 and interest due upon contract; that at the same time garnishee proceedings therein were commenced against said *John Reinig*, upon an affidavit to the effect that *Reinig* was indebted to or had property in his possession or under his control belonging to said Haberkorn, and not exempt from

Mullen and others vs. Reinig, Garnishee, etc.

execution, and that said Haberkorn had no other property liable to execution sufficient to satisfy the plaintiff's demand; that January 16, 1885, judgment was recovered in said principal action against said Haberkorn for $558.23; that January 8, 1885, the said *Reinig* answered under oath, denying any and all liability as such garnishee; that January 10, 1885, the plaintiffs elected to take issue on the said answer of the garnishee; that, upon the trial of the garnishee issues thus formed, the jury found for the plaintiffs, and assessed their damages at $558.23, with interest from January 16, 1885; that at the same term of the court, and January 4, 1886, the court set aside said verdict, and granted a new trial upon terms; that that order was affirmed by this court (68 Wis. 408); that March 6, 1888, the said *Reinig*, as such garnishee, was allowed by the trial court to file and serve an amended or supplemental answer in said cause, *nunc pro tunc*, as of November 22, 1887, in which the said garnishee set up said general assignment and his legal right to the property so assigned thereunder; that prior to July 16, 1887, the said *Reinig* had made and filed his account as such assignee; that upon the day and year last aforesaid, and upon due application and notice, the said court approved said account and discharged said garnishee and his sureties; and that notice thereof was duly served on the plaintiffs' attorney; and that said judgment of approval remained unreversed and unappealed from.

The court thereupon ordered all of the issues therein to be tried by a jury, and the same were so tried at the March term thereof for 1888; and at the close of said trial the jury returned a special verdict to the effect (1) that, at the time of making said assignment, the said Haberkorn delivered the possession of all the property he then owned to said *Reinig;* (2) that there was then due to C. W., W. C., and Louis Haberkorn the sums specified in the assignment

for wages as laborers or employees, earned within six months prior to said assignment; (3) that said Haberkorn did not intentionally prefer any of his laborers or employees for a greater sum than was actually due for wages earned within six months prior to the assignment; (5) that said Haberkorn made said assignment for the purpose and with the intention that the proceeds of the assigned property should be distributed among his creditors according to its terms; (6) that said Haberkorn did not make such assignment with the intent to cheat or defraud his creditors; (7) that said *Reinig* did not permit said Haberkorn to take away or conceal any of the property which was transferred to him by the assignment; (8) that there was no property or assets of said Haberkorn, except exemptions known to the said *Reinig*, which the latter did not take possession of and sell as assignee; (9) that said *Reinig* did not permit said Haberkorn, nor any of *Reinig's* employees, to sell any goods or collect any accounts and appropriate the proceeds thereof to their own use; (11) that said *Reinig* accepted the duties of assignee and the transfer of the property under the assignment for the purpose and with the intention of distributing the proceeds thereof among the creditors of said Haberkorn according to the terms of the assignment; (12) that said *Reinig* did not become assignee of said Haberkorn and receive the property under the assignment with the intent to cheat or defraud the creditors of Haberkorn; (13) that the value of the assigned property of the said Haberkorn in the hands of the said *Reinig*, at the time of the commencement of this action, was $2,103.

Thereupon the said *Reinig* moved for judgment upon said special verdict and the record; and the said plaintiffs moved for a new trial; and upon the hearing of said motions, April 24, 1888, and the court having further found that the answers of the jury to the special verdict were fully sustained by the evidence, it was by the court, in effect, or-

dered that the motion of the plaintiffs for a new trial be, and the same was thereby, denied; and it was, in effect, further ordered that judgment be entered therein for the said garnishee, *Reinig*, dismissing the action of the plaintiffs against him, and for his costs. From the judgment entered thereon accordingly, the plaintiffs appeal.

*C. K. Pier*, for the appellants.

For the respondent there were briefs by *Colman & Sutherland*, and oral argument by *Elihu Colman.*

CASSODAY, J.   No objection is made to the formal execution of the assignment. Undoubtedly it was drawn and executed in conformity to the statutory requirements. The statute provides that "any property, moneys, credits, and effects, held by a conveyance or title void as to the creditors of the defendant, shall be embraced in such liability" of the garnishee (sec. 2768, R. S.), except as limited by sec. 2, ch. 86, Laws of 1881. The real issue for trial in this garnishee action, therefore, was whether the assignment to *Reinig* was void as to the plaintiffs, as creditors of Haberkorn; that is to say, Was it made with the intent to hinder, delay, or defraud such creditors? The special verdict of the jury, confirmed by the court, covered all phases of that issue. The forcible argument of the learned counsel for the plaintiffs at the bar, and a careful examination of his printed brief and case, fails to convince us that any portion of that verdict is unsupported by the evidence. This being so, we are not at liberty to disturb the judgment, unless the record discloses a substantial error of law prejudicial to the plaintiffs. The brief of the appellants fails to "contain a distinct enumeration, in the form of propositions, of the several errors relied on," as required. Rule IX. The brief failed to comply with the rules in other respects. If we fail to notice all the propositions discussed, it may be attributed to

such omissions in the brief, or because we regard them as immaterial to the issue involved.

1. It is claimed that the court erred in not permitting a more wide and liberal range of examination of witnesses on the part of the plaintiffs. In support of this, numerous folios of the printed case are referred to where questions were asked and, upon objection being made, were excluded, and the plaintiffs excepted. Much of the testimony so excluded consisted of attempts on the part of the plaintiffs to impeach their own witnesses by asking them on their direct examination, in effect, whether they had not sworn or stated at some other time and place something in conflict or inconsistent with the testimony which they had just before given. Much of it was entirely foreign to the issue on trial. There can be no question as to the correctness of such rulings. The court certainly permitted a very wide and liberal range of examination on the part of the plaintiffs. Such examination was allowed to cover many years of Haberkorn's business transactions. There is more reason for saying that such examination should have been more restricted to the issue on trial. But the plaintiffs cannot complain of such want of restriction.

2. The court very properly refused to allow counsel to read to the jury an extract from an opinion of this court in another case, and characterizing another transaction. It was entirely irrelevant. Even had it been a legal proposition applicable to the case, yet it is to be remembered that juries are to be guided, as to the law applicable to the case on trial, by the trial judge — not by this court.

3. Counsel claim it was error for the court to charge the jury that " while it is the duty and the right of counsel to address you and explain and elucidate the testimony, the better to enable you to understand the questions which you are to decide, yet if counsel inadvertently mistake the evi-

dence you are to follow the evidence and not the statement of counsel in arriving at the conclusion as to the answers to be given in this case." This was simply telling the jury that they were to arrive at their conclusion from the evidence itself, even if counsel inadvertently misstated it. It furnishes no ground for criticism. It manifestly was called for by some statement made by counsel not incorporated into the record. Such absence of such statement from the record is of itself a good reason for not sustaining such exception.

4. There is evidence tending to show that, the morning before the assignment was executed, Haberkorn received a due-bill from a creditor of $20. It is claimed that this due-bill did not go into the hands of the assignee. Upon that question the jury were, in effect, instructed that as there was no direct or positive evidence that Haberkorn did not turn over to *Reinig* all of the property and assets owned by him at the time of the assignment, they were to determine from the facts and circumstances in the case whether he concealed, withheld, or failed to turn over to him any property not exempt. The court also charged the jury that, " the plaintiffs are required to show by a preponderance of the evidence that the assignor, Haberkorn, had property, assets, or money, at the time of the assignment, which he did not deliver to the assignee, *Reinig*, before you can answer the first question in the negative." At the time Haberkorn received the due-bill he still had possession of his other property. The mere receipt of it, therefore, was no evidence that it was not turned over with the other property as the jury found. If the due-bill was described in the inventory, then the title to it passed to the assignee, and made him accountable for it; but if omitted from the inventory that would not necessarily invalidate the assignment. Even fraudulent transfers of property by a debtor just previous to a general assignment do not avoid such assignment,

but are themselves avoidable under it. *Batten v. Smith*, 62 Wis. 92. The burden was upon the plaintiffs to show the incorrectness of the inventory. *Batten v. Richards*, 70 Wis. 272. Had they shown such omission, then the burden of showing that it was not intentional, but made by mistake, would have been upon the defendant. *Ibid.* The real question is whether Haberkorn made the assignment with the intent to hinder, delay, or defraud his creditors. That was necessarily a question of fact, and that was found adversely to the plaintiffs by the trial court and jury.

5. Counsel complains of those portions of the seventh and tenth questions submitted to the jury requiring them to give particulars. But as the jury never reached the tenth question at all, and the answer given to the seventh made it unnecessary to give any particulars, it is not perceivable how the plaintiffs were prejudiced.

6. The charge of the court seems to be fair and impartial. We fail to discover in it the "sentiments which an advocate would present in excuse of his client's actions," as claimed by counsel.

7. The plaintiffs requested the court to give to the jury thirty-six different instructions, covering ten printed pages, and they take exceptions because they were refused. We do not feel called upon to consider them *seriatim.* It is enough to say that the issue on trial was very simple and was fully covered by the charge of the trial court.

*By the Court.*— The judgment of the circuit court is affirmed.