## SABIN *v.* LEBENBAUM.

[S. C. 38 Pac. Rep. 434.]

1. GENERAL ASSIGNMENT — FAILURE OF ASSIGNEE TO QUALIFY.— An assignment for the benefit of creditors cannot be set aside or declared void because the assignee has not qualified. Property once assigned is in the custody of the court, and it has authority to appoint some proper person as assignee, in case of failure to qualify.

2. ASSIGNMENTS FOR CREDITORS — OMISSIONS FROM INVENTORY — CODE, §§ 3175, 3182, 3183.— In view of the provisions of sections 3175, 3182, and 3183, Hill's Code, no general assignment for the benefit of creditors can be declared fraudulent because of mistakes in the inventory, or omissions therefrom, when the instrument elsewhere sufficiently describes the property intended to be conveyed. Thus, where the assignment conveyed "all and singular, the property, estate, and effects, real and personal, * * * including all choses in action, evidences of debt, claims, dues, and payments," and referred for more particular enumeration to the inventory attached, it conveyed title to all the assignor's property, though part was omitted from the inventory.

3. IDEM — FRAUD.— An assignment will not be set aside for fraud because some of the assignor's property was omitted from the inventory, if there was no attempt at concealment, and it was omitted because the assignor thought it of little value.

4. NOTE INDORSED FOR COLLECTION — MORTGAGE SECURITY.—Where a note is indorsed in blank for collection the indorsee may, to secure its payment, take from the payee a chattel mortgage in his own name, which is valid as against the maker and his creditors.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

This is a suit by judgment creditors of the defendant Lebenbaum,—lately a merchant doing business in Portland,—to set aside a certain chattel mortgage executed by

Lebenbaum to his codefendant Silvestone on the eighth day of August, eighteen hundred and ninety-two, to secure the payment of five hundred and twenty-six dollars, and also a general assignment to the defendant Watson, made by Lebenbaum on the second day of September, eighteen hundred and ninety-two, for the benefit of all his creditors. The facts, which are substantially undisputed, are: That in eighteen hundred and ninety-one the defendant Lebenbaum engaged in the grocery business at Portland, and in purchasing goods for his business made certain misstatements to plaintiffs' assignors about the value and amount of his property and liabilities, on the faith of which credit was extended to him. In July, eighteen hundred and ninety-two, the firm of Silvestone, Murphy & Brodie received for collection from their correspondent in San Francisco, a note indorsed to them in blank, executed by Lebenbaum to one Schiller for five hundred dollars and interest, with direction to insist upon immediate settlement. On August eighth, eighteen hundred and ninety-two, Mr. Silvestone called upon Lebenbaum and demanded immediate settlement of the note, but Lebenbaum, being unable to raise the money with which to pay the note, executed and delivered to him in settlement thereof his note for five hundred and twenty-six dollars, payable one day after date, and to secure the same gave a chattel mortgage on his store, fixtures, horse and wagon, and two barrels of whisky, which was duly filed on the next day. Lebenbaum, being at the time heavily indebted, and realizing that as soon as the existence of the chattel mortgage should become known to other creditors his property would be attached and his place of business closed up, immediately after its execution made a bill of sale of his stock of goods and fixtures to his wife, to whom he was indebted in the sum of forty-eight hundred dollars, and she immediately pretended to take possession, but left

Lebenbaum in charge of the business. A few days later the plaintiffs commenced actions against Lebenbaum on their claims, and attached the property so transferred to his wife. On September second, eighteen hundred and ninety-two, Lebenbaum made a general assignment for the benefit of all his creditors to the defendant Watson, having in the mean time obtained from his wife a retransfer of the property, whereupon the plaintiffs brought this suit, obtained the appointment of a receiver, who took charge of the property, and subsequently, under an order of the court, sold it, paying the proceeds into court where it now remains for distribution. The decree of the court below being in favor of the defendants, plaintiffs appeal.

                                            AFFIRMED.

For appellants there was a brief by Messrs. *W. H. Winfree*, and *Cox, Cotton, Teal & Minor*, and an oral argument by *Mr. Winfree.*

For respondent Chas. L. Watson there was a brief by *Messrs. Emmons & Emmons*, and an oral argument by *Mr. Arthur C. Emmons.*

For respondent Julius Silvestone there was a brief by *Messrs. Gearin, Silvestone, Murphy & Brodie*, and an oral argument by *Mr. Geo. A. Brodie.*

For respondents S. and Ella Lebenbaum there was a brief and an oral argument by *Mr. William T. Muir.*

For respondent Bank of British Columbia there was a brief by *Messrs. Dolph, Mallory & Simon.*

For respondents Abrahamson, Bacon & Hennisch there was a brief by *Mr. William M. Gregory.*

Opinion by MR. CHIEF JUSTICE BEAN.

1.  The main issue in this case is the validity of the general assignment to Watson.  As a preliminary question, however, the right of the assignee, who is made a party to the suit, to appear and defend, is challenged because he has not given a bond or filed an inventory of the estate as required by law.  This objection is without merit. No such question is made by the pleadings: on the contrary, the complaint alleges the assignment to Watson; that he accepted the trust, and made a demand on the sheriff for the possession of the attached property, but that at the request and by the direction of plaintiffs the sheriff refused to deliver it to him; and then proceeds to aver that the assignment is fraudulent and void as made to hinder, delay, and defraud creditors.  The question for decision, then, as before stated, is the validity of this assignment, and not the right of any given person to discharge the duties of the assignee.  And even if properly at issue, the objection would be unavailing, as an assignment cannot be set aside and declared void for the failure of an assignee to qualify.  In case of such failure the court is authorized by statute, on the application of any person interested, to appoint some person to execute the trust, who, on giving the necessary bond, possesses all the powers and is entitled to discharge the duties of the assignee named in the deed.  The property belonging to this estate is now, and has been since the date of the assignment, in the custody of the court, and if the assignment is valid the rights of creditors can be fully protected by withholding it from any but a duly qualified assignee.  It would be an anomalous proceeding if the plaintiffs could prevent the assignee from defending in behalf of creditors a suit brought by them to set aside the assignment on the ground of fraud, to which he is made a party.

2.  The principal objection to the assignment is that Lebenbaum, while in business at Portland, represented to

his creditors that he was the owner of a band of cattle in Arizona, of the value of five thousand dollars, and of an undivided interest in a tract of land in Oakland, California, of the same value, neither of which items are included in the inventory or schedule annexed to the deed of assignment. For this reason it is argued that the assignment is fraudulent and void, because (1) it does not purport to convey all the property of the assignor, and (2) the property referred to was intentionally omitted from the inventory for the purpose of concealing and hiding it from creditors, and with an intent to defraud them. The description of the property in the deed of assignment is as follows: "All and singular, all the property, estate and effects, real and personal, of what nature and kind soever, of or belonging to the said party of the first part, wherever the same may be, including all choses in action, evidence of debt, claims, accounts, dues, and payments to the said party of the first part, the said property being more fully and particularly enumerated and described in an inventory or schedule thereof which is hereunto annexed marked Exhibit A." The plaintiffs admit that the general words of the description, if standing alone, would be sufficient to convey all the property of the assignor, but they contend that the general clause is limited and restricted by the special words referring to the inventory annexed, and that, when so limited, no property was conveyed, or intended to be conveyed, except such as is included in the inventory.

The primary inquiry in the construction of instruments of writing is the intention of the parties, and all rules of interpretation are but aids to that end. One of these rules is that if a general clause be followed by special words, the instrument shall be construed according to the special words; but this, like all other rules of interpretation, is subordinate and subject to the paramount rule

which requires that all such instruments shall be construed so as to give effect to the intention of the parties, as shown by the language used: *Platt* v. *Lott*, 17 N. Y. 478; *Emigrant Bank* v. *Roche*, 93 N. Y. 374. Now, the terms used in the body of the assignment are of so definite and certain a character as clearly to indicate that it was the intention of the assignor to pass, by the assignment, all his property of whatsoever kind and description, and the inventory or schedule annexed, as the deed recites, was only intended as a more particular enumeration and description thereof, and not to limit or restrict the description of the property conveyed. It is apparent that it was not intended to include in the schedule all the property conveyed, for the deed purports to and does convey real estate, and no such property is mentioned or referred to in the inventory annexed. The statute makes it the duty of the debtor to annex to the assignment an inventory under oath of his property, but recognizing the fact that in the haste with which assignments are often, if not usually, made, errors may occur, it expressly provides that such inventory shall not be conclusive as to the amount of a debtor's estate, (Hill's Code, § 3175,) and that no assignment shall be declared fraudulent and void for want of any list or inventory: Code, § 3182. Provision is also made for the compulsory appearance of the debtor before the court or judge to answer under oath concerning the amount and situation of his property, and the court is authorized and may compel him to deliver to the assignee any property or estate embraced in the assignment: Code, § 3182. It is also provided that the assignee shall, from time to time, file with the clerk of the court an inventory and valuation of any additional property which may come into his hands under the assignment after the filing of the first inventory: Code, § 3183. From these provisions it

seems apparent that no general assignment can be declared fraudulent and void because of some mistake in the inventory or schedule annexed to the deed, or on account of mere omissions, when the property intended to be conveyed is otherwise sufficiently described. We are aware there are many authorities holding that an omission of property from a schedule or inventory annexed to a deed of assignment will render it fraudulent and void as to creditors, but the provisions of our statutes above referred to were no doubt enacted to avoid the effect of this rule. We are clearly of the opinion, therefore, that the language of the deed in question is sufficient, under the statute, to convey all the property of the assignor, although not mentioned in the inventory or schedule: Burrill on Assignments, § 99; *Turner* v. *Jaycox,* 40 N. Y. 470; *Meekes* v. *Sanders,* 6 Iowa, 61; *Farwell* v. *Gundry,* 52 Wis. 268, 9 N. W. 11; *Batten* v. *Smith,* 62 Wis. 92, 22 N. W. 342.

3. As we understand the testimony, there is no evidence showing the cattle or land to have been omitted from the inventory with the conscious purpose or intent to mislead or deceive the creditors or assignee, but probably because they were considered of little, if any, value at the time the assignment was made. The cattle were in Arizona, and about the time of the assignment, or very soon thereafter, perished from drougth. The real estate was in litigation, which subsequently terminated adversely to the assignor, and therefore, according to his evidence, the omitted property proved to be of no value, and he is not contradicted in this respect. There was no attempt at any time to conceal this property from the creditors, but rather an endeavor, it seems to us, to obtain additional credit by misrepresentation as to its value and condition. While the inventory of an assignor is not conclusive as to the amount of his estate, and an assignment cannot be declared fraudulent or void for want of such inventory, yet

when annexed it is in one sense a representation by him that its contents disclose all his property, and if, therefore, it is consciously and purposely false to a material extent, the *prima facie* inference of a fraudulent intent in making the assignment could hardly be avoided. An intentional omission, calculated and designed to deceive and mislead the creditors, would plainly argue a fraudulent purpose; but not so an honest mistake or an omission which is explained consistently with honesty of purpose. It is the duty of an assignor to make and annex to his assignment a true and correct inventory of his property; but if, through mistake or inadvertence, he fails or neglects to do so, it will not invalidate the assignment if otherwise valid. It would be difficult to find any inventory absolutely perfect, or which included all the property of the assignor with strict accuracy. The statute, recognizing this fact, gives room for honest mistake, or even careless or thoughtless error. We think, therefore, the deed of assignment was sufficient to convey all the property of the assignor, and that the omission of the cattle and land from the inventory, under the circumstances disclosed by the testimony, did not show such a fraudulent purpose on his part as would justify the court in setting the assignment aside. It is also claimed that the assignment is void because made with the intent to hinder, delay, and defraud creditors. The court below, after hearing the testimony on this question, found and decreed the assignment to be valid, and a careful scrutiny of the record has impressed us with the correctness of that conclusion. We will not burden this opinion with a review of the evidence, but will let it suffice to say that the question presented on the entire record seems to be, in effect, whether the assignment to Watson for the benefit of all the creditors shall stand, or whether the plaintiffs shall be allowed to absorb the entire estate to the exclusion of all the other general

creditors. Upon this question the equities are all one way, and we are unable to find anything in the record which would authorize us to disturb the decree of the court below.

4.   The ground upon which plaintiffs seek to have the Silvestone mortgage declared null and void, as disclosed by their complaint, is that "it was fully paid and discharged" prior to plaintiffs' attachments. But there is not a scintilla of evidence given or offered on the trial to sustain this allegation.   In fact, it is undisputed that the mortgage was given to secure a *bona fide* existing debt due from Lebenbaum on a promissory note to one Schiller, which had been duly indorsed to Mr. Silvestone, and that it is still unpaid.   Indeed, the plaintiffs have abandoned the case as made by their complaint, and now claim that the mortgage is void because taken in the name of Mr. Silvestone, and not that of Schiller.   But it does not seem to us this contention could prevail, even if within the issues tendered by the complaint.   The note was indorsed in blank and delivered to Mr. Silvestone, and therefore passed such a title as enabled him to take security for its payment in his own name, valid as against Lebenbaum and his creditors.   It follows that the decree of the court below must be affirmed.        AFFIRMED.